UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CARIB RESORTS, INC.,

    *Plaintiff,*　　　　　　　　　　　　　　　　　CASE NO. 16-CV-25024-DLG

    v.

WATKINS UNDERWRITERS AT LLOYD'S,
SYNDICATE 457,

    *Defendant*
_____/

**DEFENDANT WATKINS UNDERWRITERS AT LLOYD'S, SYNDICATE 457'S
RESPONSE TO COURT'S FEBRUARY 1, 2018 ORDER RE CHOICE OF LAW**

COMES NOW the Defendant, WATKINS UNDERWRITERS AT LLOYD'S SYNDICATE NUMBER 457, by and through its undersigned attorneys, pursuant to the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of Florida, and files this its Response to the Court's February 1, 2018 Order regarding the issue of Choice of Law.  Further thereto, the Defendant respectfully states as follows:

**Brief Recitation of Relevant Facts**

As this Court is by now well aware, the present litigation is a marine insurance coverage dispute arising out a policy of marine insurance issued to the Plaintiff, CARIB RESORTS, INC. (hereinafter "CARIB").  Docket Entry #47, ¶¶1-6.  The policy of marine insurance issued by the Defendant, WATKINS UNDERWRITERS AT LLOYD'S SYNDICATE 457 (hereinafter "WATKINS"), afforded first-party property damage coverage for the vessel owned by the Plaintiff, a twin-hulled catamaran.  *Id*.  On August 5, 2016, the vessel simply sank at its dock in Nassau, in calm waters and fair weather.  *Id*, at ¶¶12-16.  The vessel was found sinking at the dock by its Capt. Josey.  *Id*.  In his report of the loss, Capt. Josey stated that water entered the

vessel due to the failure of a through hull fitting hose clamp attached to the raw water sea strainer. *Id*, at ¶¶13-14.

Following the report of the loss, the vessel was examined by the Defendant's surveyor and expert, Stewart Hutcheson (hereinafter "Hutcheson"). *Id*, at ¶¶21-23. Hutcheson confirmed that the vessel sank in calm seas and fair weather and that water entered the vessel through the sea strainer. *Id*. Doug Wager, WATKINS' second expert, confirmed that water entered the vessel due to the failure of a hose clamp attached to the vessel's sea strainer. *Id*, at ¶¶24-30.

Albert Cartwright (hereinafter "Cartwright") of Albert's Marine Services, who was responsible for maintaining the vessel, testified that he had no idea how water entered the vessel, but conceded at his deposition that, at some point, water entered the vessel through a displaced hose connected to the sea strainer due to a broken clamp. *Id*, at ¶26. In addition, it is Cartwright's undisputed testimony that no maintenance was ever performed on the mechanism which allowed water to enter the vessel, the sea strainer. DE#47, ¶¶37-38. Therefore, as detailed more thoroughly in the Defendant's pending motion for summary judgment, there is no evidence which rebuts the presumption that the Plaintiff's vessel was unseaworthy. DE#48, pp. 10-12.

**Analysis of Court's Choice of Law Questions**

**A. Law Applicable to Coverage Analysis and Parties' Burden**

As a general matter, the Plaintiff is correct that disputes concerning marine insurance policies trigger federal admiralty jurisdiction. *Morrison Grain Co., Inc. v. Utica Mut. Ins. Co.*,

632 F.2d 424, 428-29; 1982 A.M.C. 658 (5th Cir.1980).[1] When construing a policy of marine insurance, the first step in the choice of law analysis is to determine whether there is an entrenched rule of federal admiralty law which applies to the marine insurance policy at issue. *Wilburn Boat Co. et al. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 314; 1955 A.M.C. 467 (1955). If there is an entrenched rule of federal admiralty law, then the analysis is over and federal admiralty law applies. *Id*. If there is no applicable rule of federal admiralty law, then state law applies. *Id*.[2]

The question of which state's law applies is directly answered by the choice of law clause contained in WATKINS' marine insurance policy. The choice of law clause states, "[i]t is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York." DE#47-1, p. 20.

Choice of law clauses are valid and enforceable under federal admiralty law. *Great Lakes Reinsurance (UK) PLC v. Durham Auctions Inc.*, 585 F.3d 236; 2010 A.M.C. 185 (5th Cir.2009). This exact choice of law clause has been found valid and enforceable by numerous federal courts throughout the United States. *Great Lakes Reinsurance (UK) PLC v. Vasquez*, 341 Fed.Appx. 515 (11th Cir.2009), *Durham Auctions Inc.*, at 244, *Joseph v. Great Lakes Reinsurance (UK) PLC*, 2011 U.S.Dist.LEXIS 35428 (N.D.Oh.2011), *Great Lakes Reinsurance*

---

[1] *See also*, Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir.1981) (holding that the decisions of the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to close of business on that date, would be binding as precedent on all federal courts within the Eleventh Circuit).

[2] In addition, where there is no rule of federal admiralty law, the *Wilburn Boat* case states that the court should consider whether to create a new rule. *Id*. However, in the present case, neither party is asserting that this Court should fashion a new rule of federal admiralty law. *Id*.

*(UK) v. Rosin*, 757 F.Supp.2d 1244, 1251, 2011 A.M.C. 223 (S.D.Fla.2010), *Great Lakes Reinsurance (UK), PLC v. Sea Cat I, LLC*, 653 F.Supp.2d 1193, 2010 A.M.C. 703 (W.D.Ok.2009), *Great Lakes Reinsurance (UK) PLC v. Dion*, 2010 A.M.C. 338 (S.D.Cal.2009), *Great Lakes Reinsurance (UK) PLC v. S. Marine Concepts, Inc.*, 2009 A.M.C. 1093 (S.D.Tex.2008).

On the choice of law clause, Judge Adalberto Jordan's decision in the *Rosin* case is worth reviewing at length. *Rosin*, at 1245. The *Rosin* case arose out of a policy of marine insurance issued by Great Lakes Reinsurance (UK) PLC's managing general agent, Concept Special Risks, Ltd. *Id*, at 1246. Concept Special Risks, Ltd. acted as managing general agent for Great Lakes Reinsurance (UK) PLC in every one of the cases cited above. The policy in *Rosin*, contained the exact same choice of law clause as contained in the WATKINS policy. *Id*, at 1247. The clause was identical because it was issued by the exact same managing general agent as acted for WATKINS in the present matter, Concept Special Risks, Ltd. (hereinafter "Concept"). Concept drafted the choice of law clause and includes the clause in the all policies it issues on behalf of various insurers. Concept's relationship to WATKINS in the present matter is identical to Concept's relationship to Great Lakes Reinsurance (UK) PLC in the cases cited above. Just as in the present case, Concept acted as managing general agent.

The clause required the application of federal admiralty law or, absent an entrenched rule of federal admiralty, New York law. *Id*. The *Rosin* case turned in part on the the effect of an express warranty restricting operation of the vessel to the "named operators" identified in the insured's application for the policy. *Id*, at 1246. The district court found that, since there was no rule of federal admiralty law pertaining to named operator warranties, the issue was governed by

4

state law. *Id*, at 1252. Therefore, the district court had to determine whether to enforce the New York choice of law clause. *Id*, at 1249. To answer this question, the district court detailed all the numerous connection GLR had with New York:

> "Great Lakes has several connections with New York which, in Mr. Usher's view, gave it license to use a choice of law clause applying New York law if there was no entrenched federal admiralty precedent. First, Great Lakes initially applied to be a surplus line insurer in New York. Second, Great Lakes maintains a $100 million trust account at Citibank in New York, and also has an operating account in U.S. funds at Barclays Bank U.S. in New York. Third, Great Lakes retains lawyers based in New York to accept service of process, and the policy issued to Ms. Rosin provides that Great Lakes can be served with process through any senior partner at the firm of LeBouef Lamb et al. in New York City. Fourth, Great Lakes is a wholly-owned subsidiary of Munich Re, which owns American Re, and the offices of both Munich Re and America Re are in New York." *Rosin*, at 1250.

In the present case, WATKINS has all the same contacts with New York as GLR did in the *Rosin* case. WATKINS is a registered surplus lines insurer in New York, just like GLR. WATKINS is a Lloyds syndicate which maintains its $20,000,000,000.00 (20 billion dollar) trust account in New York, just like GLR. WATKINS maintains lawyers in New York for service of process, just like GLR. WATKINS is wholly owned by Munich Re, just like GLR. Moreover, WATKINS also chose New York law because, just like federal admiralty law, New York law recognizes that there are "special reasons for keeping in harmony with the marine insurance laws of England, [still] the great field of this business." *Miller Marine Services, Inc. v. Travelers Property Cas. Ins. Co.*, 2005 A.M.C. 2601, 2607 (E.D.N.Y.2005), *quoting*, *Wilburn Boat*, at 321.

Therefore, with respect to those issues not governed by an entrenched principle of federal admiralty law, the only applicable state law is that of the State of New York. On any issue where Florida law is the same as either federal admiralty law or New York law, Florida law

5

might be considered persuasive. But, the only law which can possible apply is federal admiralty law or New York law.

The rules of contract interpretation are the same under federal admiralty law and New York law. Under federal admiralty law, "First, the court must decide, as a matter of law, whether a policy is ambiguous, i.e., susceptible to more than one reasonable interpretation. The mere fact that policy language requires interpretation does not render the policy ambiguous. When reasonable, clauses of a marine policy must be read together and harmonized. It is axiomatic that all provisions of an insurance policy must be so construed, if possible, to give effect to each. Second, an ambiguous policy drafted by an insurance company will be strictly construed against the insurance company and when the provisions of an insurance policy are subject to two interpretations equally reasonable, that interpretation which gives greater indemnity to the insured will prevail." *Employers Ins. of Wausau v. Trotter Towing Corp.*, 834 F.2d 1206, 1210 (5th Cir.1988) (also holding that the same basic rules of insurance contract construction apply under Texas law and Louisiana law) (internal quotations and citations omitted).

Under New York law, the construction of a marine insurance contract:

"is ordinarily a matter of law to be determined by the court. In resolving a summary judgment motion involving contract interpretation, a court should accord contract language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish. When contract language is unambiguous, the district court may construe it as a matter of law and grant summary judgment accordingly. However, if policy language is ambiguous, New York law provides that such ambiguities must be construed in favor of the insured and against the insurer. Where there is ambiguity as to the existence of coverage, doubt is to be resolved in favor of the insured and against the insurer. Whether a contract is ambiguous is a threshold question of law for the court. Language in an insurance contract will be deemed ambiguous if reasonable minds could differ as to its meaning. The Second Circuit has explained that ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively

> by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business. If the language in an insurance policy is ambiguous, the court should examine the language from the vantage point of the reasonable expectations and purposes of the ordinary person."

*AGCS Marine Insurance Company v. World Fuel Services, Inc.*, 187 F.Supp.3d 428, 436-37; 2016 A.M.C. 2487 (S.D.N.Y.2016) (internal citations and quotations omitted) (applying New York law to a marine insurance policy).

### 1. Insured's Initial Burden of Establishing a Covered Loss

The first legal issue to be determined in this case arises from WATKINS' first cause of action, which asserts that the sinking of CARIB's vessel was not caused by an accidental or fortuitous event. DE#11, p. 4, DE#48, p. 5. To recover under a policy of marine insurance, the insured first bears the burden of showing that the loss was proximately caused by a fortuitous event. *LaMadrid v. National Union Fire Ins. Co. of Pittsburgh, PA*, 567 Fed.Appx. 695, 700 (11th Cir.2014). "[T]he fortuity rule is indeed a creature of federal law. Federal courts sitting in admiralty have been applying some variation of the fortuity rule in marine insurance cases for over a hundred years." *Youell v. Exxon Corp.*, 48 F.3d 105, 110; 1995 A.M.C. 1147 (2nd Cir.1995). In 1980, just prior to the creation of the Eleventh Circuit Court of Appeals, the Fifth Circuit Court of Appeals has held that the fortuity doctrine is exactly the same under federal admiralty law, New York law, and Florida law. *Morrison Grain Co., Inc. v. Utica Mut. Ins. Co.*, 632 F.2d 424, 428-29; 1982 A.M.C. 658 (5th Cir.1980).[3] In the last six years, the Eleventh Circuit Court of Appeals and the United States District Court for the Southern District of Florida

---

[3] *See also*, *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir.1981) (holding that the decisions of the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to close of business on that date, would be binding as precedent on all federal courts within the Eleventh Circuit).

have both held that there is no material difference between federal admiralty law and Florida law on the issue of fortuity. *LaMadrid*, at 700, *Sporting Products, LLC v. Pacific Insurance Company, Ltd.*, 2012 WL 13018367, p. 12 (S.D.Fla.2012).

Based on the foregoing, two things are clear: (1) *Wilburn Boat* requires that this Court apply federal admiralty law to determine the fortuity issue and (2) federal admiralty law does not differ materially from either New York law or Florida law. Therefore, while *Wilburn Boat* should require that this Court apply federal admiralty law, the policy's valid and enforceable choice of law clause requires the application of New York law if this Court elects not to apply federal admiralty law.

In the present case, this means that CARIB must carry the burden of showing that the failure of the intake hose was caused by a fortuitous event. *Id*. Moreover, CARIB must also rebut the presumption that the vessel was unseaworthy. *Insurance Co. of North America v. Lanasa Shrimp Co.*, 726 F.2d 688, 690; 1984 A.M.C. 2915, *Reisman v. New Hampshire Fire Ins. Co.*, 312 F.2d 17, 20; 1963 A.M.C. 1151, *Boston Ins. Co. v. Dehydrating Process Co.*, 204 F.2d 441, 443; 1953 A.M.C. 1364 (1st Cir.1953).

### 2. **WATKINS' Burden to Prove an Exclusion Applies / CARIB's Rebuttal Burden**

The undersigned's legal research did not uncover any caselaw holding that there is an entrenched rule of federal admiralty law allocating the burden of proof with respect to exclusions after the insured carries the burden of showing that the loss of the vessel was proximately caused by a fortuitous event. Therefore, in accordance with the policy's choice of law clause, this issue must be governed by New York law.

"Under New York law… an insurer bears the burden of proving that an exclusion applies. Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage. Once the insurer establishes that an exclusion applies, however, New York law has evolved to place the burden of proof on the insured to establish the applicability of an exception to the exclusion." *Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 121-22 (2nd Cir.2012) (internal quotations and citations omitted), *AGCS*, at 438.

Although the policy's choice of law clause precludes the application of Florida law, the Defendant has conceded that Florida law can be persuasive where it does not differ from federal admiralty law and New York. On the burden shifting issue, Florida law is identical to federal admiralty law and New York law. Under Florida law, once the insured first carries the burden of showing that the loss is covered by the policy, the burden shifts to the insurer to show that an exclusion applies. *French Cuff, Ltd. v. Markel American Ins. Co.*, 322 Fed.Appx. 669, 671; 2009 A.M.C. 1206 (11th Cir.2009) (applying Florida law to a policy delivered in Florida which contained no choice of law clause). If the insurer carries that burden, then the burden shifts back to the insured to show that an exception to the exclusion applies. *Id*.

In the present case, the policy's exclusion for damage to "vessel's engines, mechanical and electrical parts" is subject to an express exception. The exclusion disallows coverage for damage to the vessel's engines, mechanical and electrical parts "***unless*** caused by an accidental external event such as a collision, impact with a fixed or floating object, grounding, stranding, ingestion of a foreign object, lighting strike or fire." DE#11, ¶44 (emphasis added). "Unless" is a conjunction defined as, "except if." *New Oxford American Dictionary* (Oxford University

9

Press, 2005). Therefore, CARIB bears the burden of proving facts which show that the loss falls within the express exception to Exclusion K.

In order to carry that burden, CARIB must show that the loss of the vessel was proximately caused by an external event. However, as CARIB's opposition to WATKINS' pending summary judgment motion makes abundantly clear, there is no evidence whatsoever with which CARIB might carry that burden.

- When asked if he knew what caused the vessel to sink, CARIB's expert replied, "None of us know." DE#47, ¶44.
- In his report, CARIB's expert expressly stated, "Our office finds no evidence has been presented that would indicate the cause of the loss occurred due to any accidental external event." DE#47, ¶45.

Therefore, CARIB has failed to carry the burden of showing that the loss falls within the exception to Exclusion K.

### B. Law Applicable to the Express Warranty of Seaworthiness

Under federal admiralty law, every policy of marine insurance contains two implied warranties of seaworthiness; (1) that the vessel is seaworthy at the inception of the policy and (2) that the insured, through bad faith or neglect, will not knowingly allow the vessel to break ground in an unseaworthy condition. *Continental Ins. Co. v. Lone Eagle Shipping Ltd. (Liberia)*, 952 F.Supp. 1046, 1067; 1997 A.M.C. 1099 (S.D.N.Y.1997). In addition, the present policy of marine insurance contains an express warranty which states, "It is warranted that the scheduled vessel is seaworthy at all times during the duration of this insuring agreement. Breach of this warranty will void this insuring agreement from its inception." DE#47, ¶48.

The implied warranties of seaworthiness are governed by federal admiralty law, as are provisions which expressly void coverage when a vessel is unseaworthy. *Aguirre v. Citizens Cas. Co. of New York*, 441 F.2d 141, 145-146; 1971 A.M.C. 1134 (5th Cir.1971), *Saskatchewan*, at 388, *State Nat. Ins. Co. v. Anzhela Explorer, L.L.C.*, 812 F.Supp.2d 1326, 1366 (S.D.Fla.2011), *Acadia Ins. Co. v. Allied Marine Transport LLC*, 151 F.Supp.2d 107, 117-118; 2001 A.M.C. 2895 (D.Me.2001). Therefore, CARIB's breach of the implied warranties of seaworthiness is governed by federal admiralty law, as is the policy's express provision voiding coverage in any instance where the vessel is unseaworthy. *Id.*

Under federal admiralty law, the duty to keep the vessel seaworthy is non-delegable. *Reliance Nat. Ins. Co. (Europe) Ltd. v. Hanover*, 3246 F.Supp.2d 126, 136; 2003 A.M.C. 715 (D.Mass.2003), *Walker v. Reliance Ins. Co.*, 340 F.Supp. 206, 208; 1972 A.M.C. 1769 (E.D.Mich.1972), *Read v. Agricultural Ins. Co.*, 219 N.W. 632, 636; 1936 A.M.C. 25 (Wis.1935).

The law with respect to seaworthiness is identical under New York law. *Cortes Molina v. TL Dallas (Special Risks) Ltd.*, 547 F.Supp.2d 102, 113 (D.P.R.2008).

Obviously, the physical condition of a vessel is often a fact dependent inquiry which can preclude summary judgment. *Royal Indem. Co. v. Deep Sea Intern.*, 619 F.Supp.2d 14, 19; 2007 A.M.C. 1872 (S.D.N.Y.2007). However, where the facts are undisputed, the determination of whether a vessel is or is not seaworthy is a question of law for the court to decide and is appropriately resolved on summary judgment. *Underwriters at Lloyd's v. Labarca*, 260 F.3d 3, 7; 2001 A.M.C. 2409 (1st Cir.2001), *Nissan Fire & Marine Ins. Co., Ltd. v. M/V Hyundai Explorer*, 93 F.3d 641; 1996 A.M.C. 2409 (9th Cir.1996), *Insurance Co. of North America v.*

*Lanasa Shrimp Co.*, 726 F.2d 688, 690; 1984 A.M.C. 2915 (11th Cir.1984), *McQuiston v. Freighters & Tankers S. S. Co.*, 327 F.2d 746, 747; 1964 A.M.C. 1489 (5th Cir.1964), *Axis Reinsurance Co. v. Resmondo*, 2009 A.M.C. 2597, 2598 (S.D.Fla.2009), *The Connecticut Indem. Co. v. Palivoda*, 2005 A.M.C. 2047, 2051 (M.D.Fla.2005), *Smith v. Weeks Marine, Inc.*, 29 So.3d 1269; 2010 A.M.C. 2844 (La.App.3d Cir.2010), *Proprietors Ins. Co. v. Siegel*, 410 So. 2d 993 (Fla. 3d DCA 1982).

Since the question of whether a vessel is seaworthy is a question of law, it is most certainly not a question for which any witness or expert opinion is permitted. *Newill v. Campbell Transp. Co., Inc.*, 2015 WL 222332 (W.D.Pa.2015), *Thalji v. TECO Barge Line*, 2007 WL 7702719 (W.D.Ky.2007). Any witness or expert who opines on a legal question usurps this court's proper function. *Id*. This court is the expert on the legal requirements of seaworthiness and it is for this court to determine whether a vessel is or is not seaworthy. *Id*.

Under federal admiralty law, "[t]he burden of proving unseaworthiness is on the insurer." *Federal Ins. Co. v. PGG Realty, LLC*, 538 F.Supp.2d 680, 694 (S.D.N.Y.2008).

Perhaps because the federal admiralty law is so perfectly clear, the undersigned could find no cases holding that either New York or Florida has any law with respect to the issue of seaworthiness. Therefore, there should be no dispute that the issue is governed by federal admiralty law.

On this point, only one more issue needs to be addressed. CARIB alleges in its own brief that it has rebutted the presumption of unseaworthiness by presenting evidence that the vessel was properly maintained. DE#62, p. 9. However, CARIB's brief fails to note that the evidence is undisputed that no maintenance was ever carried out on the sea strainer, which is the

12

mechanism which failed and allowed water to enter the vessel. The undisputed facts show that although Albert's Marine Service conducted routine maintenance on the vessel, Albert's Marine Service never performed any maintenance whatsoever on the port engine raw water sea-strainer. DE#47, ¶¶37-38. Therefore, even if the rest of the vessel was kept "shipshape and Bristol fashion", there is no dispute that nothing whatsoever was done to maintain the sea-strainer. Therefore, since there is no evidence of any regular maintenance to the sea-trainer, the presumption of unseaworthiness has not been rebutted.

### C. Law Applicable to Attorney's Fees

The Eleventh Circuit Court of Appeals has held that there is no entrenched rule of federal admiralty pertaining to attorney's fees and that the issue is therefore governed by state law. *All Underwriters v. Weisberg*, 222 F.3d 1309, 1312-15; 2000 A.M.C. 2926 (11th Cir.2000). In the absence of a choice of law clause, this means that the attorney's fees issue would be governed by the law of the state where the policy was delivered: Florida. *Id*. Under the Florida attorney's fees statute, a prevailing insured always recovers attorney's fees, without the necessity of showing that the insurer acted in bad faith. Fla. Stat. §627.428. The insurer is strictly liable for attorney's fees. *Id*.

However, as noted above, the present policy of marine insurance contains a valid and enforceable choice of law clause. *See cases cited supra*. Multiple federal district courts have held that, due to the operation of this exact choice of law clause, the issue of attorney's fees is governed by New York law, not the law of the state where the policy was delivered. This exact issue arose in the Southern District of Texas in *Great Lakes Reinsurance (UK) PLC v. Tico Time Marine LLC*, a marine insurance coverage dispute arising out of the sinking of a vessel. 2011

WL 1044154 (S.D.Tex.2011).  In response to GLR's declaratory judgment action, the insured filed a counterclaim demanding attorney's fees under the Texas statute.  *Id*.  The court in *Tico Time* found that GLR's valid and enforceable choice of law clause precluded the application of Texas law.  *Id*, at p. 4.

In another case, involving the exact same policy and choice of law clause, a prevailing insured made a post-summary judgment motion for attorney's fees.  *Chiariello v. ING Groep NV*, 2006 A.M.C. 2148 (N.D.Cal.2006).[4]  Just like the Eleventh Circuit in *Weisberg*, the court in *Chiariello* found that there was no entrenched rule of federal admiralty law with respect to the issue of attorney's fees and that state law should be applied.  *Id*, at 2152.  Therefore, the court held that, pursuant to the valid and enforceable choice of law clause, the issue of attorney's fees had to be governed by New York state law.  *Id*.

Under New York law, there is no cause of action for bad faith breach of an insurance contract with respect to first-party coverage (which is coverage for physical loss or damage to the vessel).  *Id*.  Where the insurer fails to defend the insured under the third-party liability coverage portion of the policy, then an insurer can be liable for attorney's fees.  *Id*.  But, in the context of first-party coverage, which is the issue in the present case, New York law does not allow a prevailing insured to recover attorney's fees.  *Id*.

---

[4] Just as Concept acted as managing general agent for Great Lakes Reinsurance (UK) PLC and WATKINS, Concept also acted as managing general agent for ING Groep, NV.  At the time that *Chiariello* was decided, Concept was known was T.L. Dallas (Special Risks) Ltd.  *See also*, *Great Lakes v. Rosin*, *supra* (in which Judge Jordan expressly recognized that T.L. Dallas acted as underwriting and claims handling agent for Great Lakes Reinsurance (UK) PLC).  This is why the marine insurance policies issued by GLR, ING Groep NV, and WATKINS all contain the same choice of law clause.

Therefore, in response to this Court's question, New York law and Florida law are materially different on the issue of attorney's fees and the policy's choice of law clause requires the application of New York law.

Dated: February 16, 2018
Fort Lauderdale, Florida

> GOLDMAN & HELLMAN
> Attorneys for Defendant
> 8751 W. Broward Boulevard
> Suite 404
> Fort Lauderdale, FL 33324
> Tel (954) 356-0460
> Fax (954) 832-0878
>
>
> By:     /s/ Steven E. Goldman
>           STEVEN E. GOLDMAN, ESQ
>           FLA. BAR NO. 345210

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 16, 2018 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send an electronic Notice of Filing to all counsel of record:

GOLDMAN & HELLMAN
Attorneys for Defendant
8751 W. Broward Boulevard
Suite 404
Fort Lauderdale, FL 33324
Tel (954) 356-0460
Fax (954) 832-0878


By: ___/s/ Steven E. Goldman___
      STEVEN E. GOLDMAN, ESQ
      FLA. BAR NO. 345210